UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ROY BOTHWELL,<br>    Plaintiff, | )<br>)<br>) |
| v. | )    CAUSE NO.: 2:17-CV-427-JEM |
| NANCY A. BERRYHILL,<br>Deputy Commissioner for Operations,<br>Social Security Administration,<br>    Defendant. | )<br>)<br>)<br>)<br>) |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Roy Bothwell, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 17], filed June 27, 2018. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On September 26, 2018, the Commissioner filed a response, and on October 8, 2018, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**I.    Background**

On March 24, 2005, Plaintiff was found to be disabled and entitled to disability benefits. On March 19, 2012, the agency determined that Plaintiff was no longer disabled or entitled to benefits. Plaintiff requested reconsideration, but was denied. On September 11, 2013, Administrative Law Judge ("ALJ") Henry Kramzyk issued a decision denying benefits, and the Appeals Council denied review. On October 1, 2015, this Court issued an opinion and order reversing and remanding the ALJ's decision. On August 19, 2016, Administrative Law Judge William E. Sampson held a hearing at which Plaintiff, with an attorney, an impartial medical expert, and a vocational expert ("VE")

1

testified. On November 16, 2016, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The most recent favorable medical decision finding that the claimant was disabled is the decision dated March 24, 2005. This is known as the "comparison point decision" or CPD.

2. At the time of the CPD, the claimant had the following medically determinable impairments: multiple sclerosis and narcolepsy. These impairments were found to medically equal section(s) 11.09 of 20 CFR Part 404, Subpart P, Appendix 1.

3. Through March 19, 2012, the date the claimant's disability ended, the claimant did not engage in substantial gainful activity.

4. The medical evidence establishes that, as of March 19, 2012, the claimant had the following medically determinable impairments: multiple sclerosis, osteoarthritis of the left hip, pars defect of the lumbar spine, degenerative disc disease, attention deficit hyperactive disorder (ADHD) and obesity.

5. Since March 19, 2012, the claimant did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

6. Medical improvement occurred as of March 19, 2012.

7. The medical improvement is related to the ability to work because, as of March 19, 2012, the claimant's CPD impairment(s) no longer met or medically equaled the same listing(s) that was equaled at the time of the CPD.

8. As of March 19, 2012, the claimant continued to have a severe impairment or combination of impairments.

9. Based on the impairments present as of March 19, 2012, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(a) as the claimant is able to sit, stand and/or walk for six hours in an eight hour workday, except: the claimant requires a sit/stand option that allows him to alternate between sitting and standing every 30 minutes, is able to lift and/or carry 10 pounds maximum, is unable to climb ladders, ropes or scaffolds, crouch, kneel or crawl, may occasionally climb ramps and stairs, bend and twist, balance and stoop and must avoid even occasional exposure to extreme heat, hazards such as unprotected heights and dangerous

> machinery, pulmonary irritants such as dust, fumes and gases and slippery and uneven surfaces and all exposure to excessive vibration.
>
> 10. As of March 19, 2012, the claimant was unable to perform past relevant work.
>
> 11. On March 19, 2012, the claimant was a younger individual age 18-44.
>
> 12. The claimant has at least a high school education and is able to communicate in English.
>
> 13. Beginning on March 19, 2012, transferability of job skills is not material to the definition of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.
>
> 14. As of March 19, 2012, considering the claimant's age, education, work experience, and residual functional capacity based on the impairments present as of March 19, 2012, the claimant was able to perform a signficant number of jobs in the national economy.
>
> 15. The claimant's disability ended as of March 19, 2012.

The Appeals Council again denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.  Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous

legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing

4

court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III. Analysis

Plaintiff argues that the ALJ failed to consider medical opinions in determining whether he met a Listing, and failed to properly consider his subjective complaints of fatigue. The Commissioner argues that the ALJ's decision was supported by substantial evidence.

The determination of whether a claimant suffers from a listed impairment comes at steps two and three of the ALJ's analysis. At step two, the ALJ examines whether the claimant has an impairment or combination of impairments that are severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). A medically determinable impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c); 416.920(c). The determination of whether a claimant suffers from a severe condition that meets a listed impairment comes at step three of the sequential analysis. At step three, the ALJ must determine whether the claimant's impairments meet an impairment listed in the appendix to the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). An individual suffering from an impairment that meets the description of a listing or its equivalent is conclusively presumed to be disabled. *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

The ALJ specifically found that Plaintiff's impairments did not meet or medically equal the

criteria of Listings 1.04, 11.09, and 14.09. With regard to Listing 11.09 ("Multiple sclerosis"), the ALJ's analysis consisted of a recitation of the criteria:

> "[T]here is no medically documented evidence of disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or B. Marked limitation in physical functioning, and in one of the following: Understanding, remembering, or applying information; or Interacting with others; or Concentrating, persisting, or maintaining pace; or Adapting or managing oneself."

At the hearing, the independent medical expert, Dr. Karl Manders, testified:

> "He doesn't need a listing of multiple sclerosis . . . that's the problem with evaluating this. He's got a little of this and a little of that due to secondary MS and due to secondary degenerative disk [sic] disease, and trouble with his lumbar spine. . . .
> "[T]here's no question in my mind that they do have fatigue but it's clearly subjective in nature. And it says here 11.09C that it's got to be tested in the office on physical examination. And that's unfortunate. But we could, you know, take the MS and say that maybe he would equal the listing in that he does, back pain, and he has back pain. . . . we could, combined with the MS, the two together, we could take – it certainly makes an impact on his, on his ability to work. Whether or not it, someone could say that whether he actually meets the listing per se or equals a listing, I think under the rules . . . we could maybe, and I played with this quite a bit, 11.09 and saying that we might just equal MS. It could be challenged, but, you know, that's all I can do."

The ALJ stated that Dr. Manders "indicated that the claimant does not meet or equal a listing, as his allegations of fatigue are subjective and not supported by the objective evidence." Dr. Manders did testify that "there's no question in my mind that they do have fatigue but it's clearly subjective in nature . . . [i]t says here 11.09C that it's got to be tested in the office on physical examination," apparently referring to what he viewed as the requirement of objective evidence to *meet* Listing 11.09. But the ALJ mischaracterized the expert's admittedly unclear testimony indicating that Plaintiff "might just equal" the Listing, based on the combination of impairments. On that basis, as well as the evidence in the record supporting the impairments referenced by Dr. Manders, the ALJ

6

needed to analyze whether Plaintiff medically equaled the criteria of Listing 11.09. *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) ("A decision denying benefits need not discuss every piece of evidence, but if it lacks an adequate discussion of the issues, it will be remanded."); *see also* 20 C.F.R. §§ 404.1527(c) ([the ALJ] "must evaluate every medical opinion we receive").

Plaintiff also argues that the ALJ failed to adequately consider his subjective complaints of fatigue and the need to take naps. In assessing a claimant's substantive complaints, the ALJ must "evaluate whether [those] statements are consistent with objective medical evidence and the other evidence," and "explain" which symptoms were found to be consistent or inconsistent with the evidence. SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016), at *6, *8; *see also Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (remanding where ALJ failed to "explain[] the inconsistencies" between a claimant's activities of daily living, his complaints of pain, and the medical evidence) (citing *Clifford*, 227 F.3d at 870-72). In this case, the ALJ concluded that Plaintiff's allegations "were not consistent with the objective evidence. . . . While the claimant testified that he has low levels of energy and dizziness, mental status examinations longitudinally indicate that he is alert and fully oriented with normal thought processes. . . . There is no indication that the claimant needs to sleep during the day." The ALJ did not explain why findings that Plaintiff was alert, fully oriented and had normal thought processes during medical examinations are inconsistent with fatigue and a need to take naps. *See O'Connor-Spinner*, 627 F.3d at 618 (an ALJ must provide a "logical bridge" between the evidence and his conclusions). The record did contain evidence that Plaintiff suffered fatigue and needed to sleep during the day, including a polysomnogram indicating an "abnormal sleep architecture" with "a decrease in the percentage of slow wave and REM sleep," and diagnoses by a neurologist, Dr. Larry Salberg, of periodic limb movement disorder and narcolepsy, including

7

"sleep attacks which cannot be anticipated." An ALJ "cannot rely only on the evidence that supports [his] opinion." *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (quoting *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)); *see also Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("[T]he ALJ identified pieces of evidence in the record that supported her conclusion that [the plaintiff] was not disabled, but she ignored related evidence that undermined her conclusion. This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence."); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

On remand, the ALJ is directed to thoroughly analyze whether Plaintiff's mental impairments meet or medically equal the criteria of a Listing. If the ALJ determines that Plaintiff's impairments do not meet or medically equal the criteria of a Listing, the ALJ is instructed to evaluate Plaintiff's complaints in the manner prescribed by Social Security Ruling 16-3p, with reference to the medical evidence in the record, including that which does not support the ALJ's conclusions.

### IV. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 17], **DIRECTS** the Court to enter judgment in favor of Plaintiff, and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 1st day of February, 2019.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record